UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Victoria Cross, | ) |
| Plaintiff, | ) ) ) |
| | ) CASE NO: |
| v. | ) JURY DEMAND |
| | ) |
| Glovis Alabama, LLC, | ) ) |
| Defendant. | ) ) |

# COMPLAINT

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over claims of Federal Question under 28 U.S.C. § 1331 and over claims to redress Civil Rights violations under 28 U.S.C. § 1343(a)(4). This suit is authorized and instituted pursuant 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C. § 1981 (depravation of civil and constitutional rights), 29 U.S. C. §621 *et seq.* (The Age Discrimination in Employment Act), and 29 U.S.C. §2601 *et seq.* (The Family and Medical Leave Act of 1993).

2. This suit seeks to recover damages for discriminatory employment practices based on race, color, and age, and retaliatory employment practices for opposing conduct that violates the FMLA.

1

3. Venue is proper within the Northern Division of the Middle District of Alabama. At all relevant times, Defendant employed Plaintiff in Montgomery, Alabama.

## II.   PARTIES

4. Plaintiff, Victoria Cross ("Cross" or "Plaintiff") is a bi-racial (Black/White), adult resident of Alabama and a citizen of the United States.

5. Defendant, Glovis Alabama, LLC ("Glovis" or "Defendant") is a limited liability company organized under the laws of the state of Alabama that at all relevant times was authorized to do business and was doing business in Montgomery, Alabama.

6. At all times relevant to this action, Glovis employed Cross, making Glovis an "employer" for the purpose of Title VII, § 1981, the ADEA, and the FMLA.

7. Glovis employed at least fifteen (15) persons for each working day during each twenty (20) or more calendar work weeks in the current or preceding calendar year.

8. Glovis employed at least fifty (50) employees within a seventy-five (75)mile radius of Plaintiff's work location for each working day during each twenty (20) or more calendar work weeks in the current or preceding calendar year.

### III.   CONDITIONS PRECEDENT

9. On December 8, 2022, within 180 days of a discriminatory and retaliatory change to the terms and conditions of Plaintiff's employment, Cross filed a *pro se* Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 420-2023-00796. (Exhibit 1).

10. After engaging counsel, Cross filed an amended charge clarifying her allegations and dismissing gender claims. (Exhibit 2).

11. Plaintiff requested a Dismissal and Notice of Rights from the EEOC on December 3, 2024, more than 180 days have passed since the filing of the charge of discrimination.

12. Plaintiff has fulfilled all conditions precedent under Title VII and the ADEA.

13. Plaintiff has no conditions precedent under § 1981 or the FMLA.

### IV.   FACTUAL ALLEGATIONS

14. Victoria Cross is bi-racial with both Black and White ancestry.

15. Cross's ancestry provided her with a very light skin tone and naturally soft/loose curly hair more often associated with White ancestry.

16. Cross's hair texture does not require chemical straightening and would not naturally fall into dreadlocks or coils.

17. Cross is 50 years old.

18. Glovis hired Cross on November 22, 2021, as a Human Resources Specialist (HRS), a management level position.

19. Cross worked with several other women in the human resources office of Glovis, including Barbara Williams, Latoya Braxton, Tina Broughton, and Rebecca Blake.

20. Barbara Williams was Cross's supervisor.

21. Williams is Black, with a darker skin tone, and chemically straightens her hair, which is a more natural, course texture, often associated with Black ancestry.

22. Williams openly discussed the difficulty she had in caring for her hair texture.

23. Braxton, another HRS, is Black, with a darker skin tone, and chemically treats or adds weaves to her hair to style around the course texture associated with Black ancestry and is younger than Cross.

24. Tina Broughton is White with a hair texture associate with White ancestry.

25. Rebecca Blake is White with a hair texture associated with White ancestry.

26. Cross began working for Glovis through a temp agency but was not able to complete the tasks Glovis needed because temporary employees could not have the proper credentials.

27. Glovis, in need of someone to fill the backlog immediately, bought Cross out of the temporary contract and hired her as a Glovis employees to credential her.

28. Williams was open about only hiring Cross because of the immediate need.

29. Glovis was aware Cross had some HR experience for a smaller company but would need 100% on-the-job training for certain duties.

30. Beginning in February of 2022, one of Cross's employment duties was to verify employees through E-Verify.

31. Glovis trained Cross to verify employees by entering information into the program based on information provided to her by Braxton, the onboarding employee.

32. Braxton would onboard employees through orientation, gather their identification documents, communicate with them about onboarding, and provide the verification documents to Cross.

33. Glovis did not train Cross on gathering employee verification information or other involvement in the onboarding process.

34. Glovis, a South Korean based company, rotates employees with Korean Citizenship through upper management every few years on visas.

35. In March of 2022, during the beginning of Cross's time conducting the E-Verify of employees alone, Glovis rotated in Mr. Kwon, a South Korean citizen, to operate as CEO.

36. Braxton did not provide any identification information to Cross that would allow her to verify him in the same manner she had verified other employees.

37. Cross did not question Braxton because she had never verified another high-ranking employee (CEO) and she had never verified an employee operating on a visa prior to Kwon's hiring in March of 2022.

38. During Cross's employment, Glovis hired Michele Yarbrough as Employee Relations Manager/Legal.

39. Braxton gathered Yarbrough's onboarding information and Cross verified her like normal.

40. In May or June of 2022, Cross received login credentials for ADP for the limited purpose of updating employee information, including passwords, vacation, sick time, and medical leave. Cross never entered new hires into ADP.

41. In August and September of 2022, Cross raised concerns with Williams that Glovis was terminating employees through the points system when they

were under FMLA, and she believed they were not being treated fairly. Williams did not address Cross's concerns.

42. In October of 2022, Cross complained again about the FMLA violations to Employee Relations/Legal, Yarbrough.

43. Before, Williams had told Cross "we have to be careful what we say in here" and that she "didn't want anything coming back to [her] that was said in HR."

44. Just after her complaint, in November of 2022, after one year of employment, Cross and others were preparing for an audit by the Department of Labor.

45. Cross discovered that Kwon had never been verified and that his file had no identification or a completed I-9.

46. Cross immediately notified Williams, her supervisor, that Kwon's file contained no information other than his Blue Cross Blue Shield application, and he had not been verified.

47. Because Cross discovered and reported the error, Glovis was able to remedy the situation without any penalty on November 29, 2022.

48. On December 5, 2022, just before the end of the workday, Williams and Yarbrough called Cross into a training room.

49. Cross, having been employed just over one-year, without any discipline, believed she was getting her annual evaluation and a raise.

50. Instead, Williams terminated Cross.

51. Williams pointed to the Kwon verification delay as the singular reason and placed fault on Cross.

52. Cross pointed out that she had not been responsible for gathering verification documents and that the error had been fixed because she reported it.

53. Glovis did not terminate Braxton for the same error and Braxton had been promoted.

54. In May of 2022, Broughton made an employment error by sending an e-mail to a team member with other employee personal identifiers related to health insurance information, which the former team member posted to Facebook. Glovis did not terminate Broughton and promoted her shortly after.

55. Glovis did not follow its progressive discipline policy when it terminated Cross.

56. During her employment, Braxton and Williams were standoffish toward Cross and would exclude her regularly.

57. In July of 2022, Williams publicly scolded Cross for hanging a decal in her cubical that said "be the reason someone smiles today."

58. Shortly after scolding Cross and requiring her to remove the decal, Williams placed a corkboard behind her own desk where she hung personal items including quotes and photographs.

59. In October of 2022, Williams denied Cross the use of a future vacation request (January), knowing that Cross intended to travel to Ohio to be with her family after the holidays.

60. Williams authorized vacation time for herself and at least two others over the busy holiday season, November and December.

61. When Cross would tell other co-workers that she was being excluded, or treated rudely, co-workers would comment that the women were "jealous" of her.

62. In the context, Cross understood this to refer to color discrimination, or differential treatment between darker and lighter skinned employees with Black ancestry, and because she had "white" hair that was easier to style and maintain.

63. Glovis was motivated by Cross's race and color or otherwise terminated her because of her race, color, and age.

64. Glovis terminated Cross because of her protected activity – opposition to the points for employees on FMLA.

65. Glovis replaced Cross with Natasha Buskey, a younger, Black, female, with darker skin and chemically straightened hair.

## V.   STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### TITLE VII – RACE DISCRIMINATION

66. Plaintiff adopts and realleges the allegations of paragraphs 1-65 as if fully set forth herein.

67. Plaintiff is bi-racial (Black/White) and because of her ancestry has soft, fine, curly hear that is easy to style without chemical straighteners "White hair"

68. Defendant subjected Plaintiff to different treatment than Black or White employees, and employees with "Black hair" in the terms and conditions of her employment, because of her race, in violation of Title VII.

69. Defendant discriminated against Plaintiff by excluding her, not equally applying a progressive discipline policy, and terminating her for pretextual reasons.

70. Plaintiff's race was a motivating factor in Defendant's differential treatment of Plaintiff.

71. Because of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages, including, but not limited to, lost wages and benefits,

embarrassment, humiliation, shame, damages to professional reputation, and emotional pain and anguish.

72. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

73. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court

## RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII;

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII;

c. Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including

damages for mental anguish), punitive damages, interest attorney's fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**COUNT TWO**
**TITLE VII – COLOR DISCRIMINATION**

74. Plaintiff adopts and realleges the allegations of paragraphs 1-65 as if fully set forth herein.

75. Because of Plaintiff's bi-racial ancestry, she has a very light skin tone and soft, fine, curly hear that is easy to style without chemical straighteners "White hair."

76. Defendant subjected Plaintiff to different treatment than employees with darker skin-tone in the terms and conditions of her employment, because of her color, in violation of Title VII.

77. Defendant discriminated against Plaintiff by excluding her, not equally applying a progressive discipline policy, and terminating her for pretextual reasons.

78. Plaintiff's color was a motivating factor in Defendant's differential treatment of Plaintiff.

79. Because of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages including, but not limited to, lost wages and benefits,

12

embarrassment, humiliation, shame, damages to professional reputation, and emotional pain and anguish.

80. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

81. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court

## RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII;

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII;

c. Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including

damages for mental anguish), punitive damages, interest attorney's fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT THREE
## § 1981 RACE DISCRIMINATION

82. Plaintiff adopts and realleges the allegations of paragraphs 1-65 as if fully set forth herein.

83. Plaintiff is bi-racial (Black/White) and because of her ancestry has soft, fine, curly hear that is easy to style without chemical straighteners, "White hair."

84. Defendant subjected Plaintiff to different treatment than Black or White employees, and employees with "Black hair" in the terms and conditions of her employment, because of her race, in violation of § 1981.

85. Defendant discriminated against Plaintiff by excluding her, not equally applying a progressive discipline policy, and terminating her for pretextual reasons.

86. Because of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages including, but not limited to, lost wages and benefits, embarrassment, humiliation, shame, damages to professional reputation, and emotional pain and anguish.

87. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

88. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court

## RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by § 1981.

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating § 1981;

c. Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest attorney's fees, expenses, and costs; and

    d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT FOUR
## AGE DISCRIMINATION

89. Plaintiff adopts and realleges the allegations of paragraphs 1-13, 17-20, 23, 26-40, 44-53, 55, and 65 as if fully set forth herein.

90. Plaintiff is over the age of 40.

91. Defendant discriminated against Plaintiff because of her age by treating her different in the terms and conditions of her employment, including discipline, from a younger employee, Braxton.

92. Defendant discriminated against Plaintiff because of her age by replacing her with a younger employee.

93. Defendants discriminatory conduct violates the ADEA.

94. Because of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages including, but not limited to, lost wages and benefits, embarrassment, humiliation, shame, damages to professional reputation, and emotional pain and anguish.

95. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for lost wages, liquidated damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

96. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

## RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADEA.

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADEA;

c. Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, backpay, liquidated damages, interest attorney's fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT FIVE
## FMLA – RETALIATION

97. Plaintiff adopts and realleges the allegations of paragraphs 1-8, 13, 18-20, 26-53, 55, 59-60, 64 as if fully set forth herein.

98. Plaintiff engaged in protected activity in October of 2022, under the FMLA, when she complained to management and human resources that Glovis was calculating points incorrectly for individuals subject to FMLA protections.

99. After she complained in October of 2022, Williams denied Plaintiff's future leave request.

100. Approximately six weeks after her protected activity, Defendant terminated Plaintiff citing a pretextual reason.

101. Defendant's conduct constitutes retaliation under the FMLA.

102. Because of Defendant's unlawful and retaliatory conduct, Plaintiff suffered damages including, but not limited to, lost wages and benefits, embarrassment, humiliation, shame, damages to professional reputation, and emotional pain and anguish.

103. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for lost wages, liquidated damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

104. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

## RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the FMLA;

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating the FMLA;

c. Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, backpay, liquidated damages, interest attorney's fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY
ON ALL CLAIMS SO TRIABLE**

                                                 Respectfully submitted,
                                                 /s/ Leslie A. Palmer
                                                 ASB-0436-L40P

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
(205) 285-3050
leslie@palmerlegalservices.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL**
Glovis Alabama, LLC
c/o Michele Yarbrough, Registered Agent
300 HYUNDAI BLVD
MONTGOMERY, AL 36105